United States District Court
Southern District of Texas
**ENTERED**
October 04, 2017
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ENGLOBAL U.S. INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2746 |
| | § | |
| | § | |
| NATIVE AMERICAN SERVICES | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

ENGlobal U.S. Inc. sued Native American Services Corporation in state court, alleging that Native American breached a commercial services contract.  Native American timely removed on the basis of federal diversity jurisdiction and counterclaimed against ENGlobal for fraudulent inducement, negligent misrepresentation, breach of contract, and money had and received.  (Docket Entry Nos. 1, 9).  After discovery, ENGlobal moved for summary judgment on its breach-of-contract claim and for partial summary judgment on Native American's counterclaims.  (Docket Entry Nos. 27, 28).  Native American responded, ENGlobal replied, and Native American surreplied.  (Docket Entry Nos. 29, 30, 33, and 39).

Based on the pleadings; the motion, responses, and replies; the record; and the applicable law, the motion for summary judgment, (Docket Entry No. 27), is denied, and the motion for partial summary judgment, (Docket Entry No. 28), is granted in part and denied in part.  Native American's claims for consequential damages, exemplary damages, and loss of good will are barred by the contract's mutual waiver provision limiting damages.  The mutual waiver provision does not bar Native American's claims for direct damages, and lost profits, and those claims may proceed.

1

The reasons for these rulings are explained below.

## I.    Background

Native American and ENGlobal entered into a contract in which ENGlobal agreed to provide Native American consulting and engineering services for a biomass powerplant project in the United Kingdom.  In April 2016, Native American sent a "letter of concern" to ENGlobal, asserting deficiencies in contract performance.  On May 31, 2016, Native American sent ENGlobal a notice of default under the contract terms that gave ENGlobal five business days to cure any breaches Native American identified.  On June 7, 2016, before the project was complete, Native American sent ENGlobal a letter terminating the contract.

ENGlobal alleges that when the contract was terminated, Native American had failed to pay three outstanding invoices totaling $593,900.56.  ENGlobal alleges that Native American caused ENGlobal to perform work outside the scope of the contract by requesting changes to the scope of work and by failing to explain and define the scope of work the contract covered.  ENGlobal alleges that Native American breached the contract by failing to pay the outstanding invoices; fraudulently induced ENGlobal to enter the contract by making false representations about the scope of the work, knowing that they were false, and intending that ENGlobal would rely on them in entering the contract; made negligent misrepresentations during the contract negotiations; and is liable under a quantum meruit theory of liability.

Native American's counterclaim alleges that ENGlobal failed to meet deadlines or make required progress on the work, and that ENGlobal billed Native American for work outside the scope of the contract.  Native American alleges that ENGlobal falsely represented that it was capable of completing the contract work but failed to do so, causing Native American to lose the contract

for the biomass powerplant project and suffer damages.  Native American asserts counterclaims for fraudulent inducement, negligent misrepresentation, breach of contract, and money had and received.

The parties dispute whether the contract's scope of work included undertaking a feasibility study; Native American alleges that a feasibility study was never part of the scope of the work.  The parties dispute whether the scope of work set out in the contract subcontracted a significant portion of the project work to ENGlobal.  The parties also dispute whether Native American owed ENGlobal for the three invoices when the contract was terminated.  Native American alleges that it reviewed those invoices and determined that they were not due because ENGlobal had not adequately, completely, or timely performed the services billed and because the invoices included line-items for time spent on activities outside the contract's scope of work.

The claims and arguments are analyzed below.

## II.    The Legal Standard for Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Id*. (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding

4

a summary judgment motion, the court draws all reasonable inferences in the light most favorable

to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*,

783 F.3d at 536.

## III.    Analysis

### A.     ENGlobal's Motion for Summary Judgment

ENGlobal moved for summary judgment on its breach-of-contract claim. (Docket Entry

No. 27). The parties agree that Texas law applies. (Docket Entry No. 27, Ex. A at p. 5). Under

Texas law, the elements of a breach of contract are: (1) the existence of a valid contract;

(2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450

(Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

> The contract addressed the payment for costs and services on early termination, as follows:
>
> In the event Client decides not to continue any Work on a project, Client may
> terminate this Agreement as to such Work by giving Consultant thirty (30) days
> advance written notice. . . . In any of the foregoing events, Consultant will be paid
> by Client for Services rendered to the date of termination, for all costs incurred by
> Consultant in connection with the Services to the date of termination, for all costs
> necessary to terminate all commitments for the Services made by Consultant through
> the date of termination of the Services, and for all costs and expenses of Consultant's
> demobilization. Charges for such termination shall be paid according to Appendices
> "A" and "B."

(Docket Entry No. 27, Ex. A at pp. 2–3).

ENGlobal argues that the contract required payment for costs and services on early

termination of the contract, that Native American terminated the contract before the work was

completed, and that Native American refused to pay ENGlobal's outstanding invoices. ENGlobal

argues that these allegations satisfy the elements of its breach-of-contract claim, that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law.

Native American responds that ENGlobal has failed to identify or present proof of its performance under the contract. Native American argues that there are factual disputes material to determining whether ENGlobal performed its contract obligations, whether Native American breached, and, if so, whether ENGlobal suffered any damages.

Factual disputes material to determining whether ENGlobal performed as the contract required are presented in Native American's allegations and competent summary judgment evidence. This evidence supports an inference that ENGlobal did not adequately perform under the contract. ENGlobal's motion for summary judgment does not point to evidence supporting an inference that it performed according to the contract terms. ENGlobal's only evidence on the issue is copies of the three unpaid invoices and an allegation that they were "due and payable." (Docket Entry No. 27, at ¶ 5; Exs. C–F). The factual disputes about ENGlobal's performance are material to an element of its breach-of-contract claim and preclude summary judgment on that claim.

There are also factual disputes material to determining whether Native American breached by failing to pay the invoices. In a declaration attached to Native American's response, Rick Luna, Native American's chief executive officer, stated that he reviewed ENGlobal's invoices and determined that they were not due and payable "because ENGlobal had not adequately, completely or timely performed on any portion of the Services (as that term is defined in the Agreement) for which it had billed NASCO as at the date of termination of the Agreement." (Docket Entry No. 29, Ex. 1 at ¶ 9). Luna also stated that "the invoices now in issue included line-items for time spent on

activities that were not included in ENGlobal's Scope of Work and Deliverables, including the preparation of feasibility study reports." (*Id.*). This dispute also precludes summary judgment.

ENGlobal's motion for summary judgment, (Docket Entry No. 27), is denied.

### B.    ENGlobal's Motion for Partial Summary Judgment

Native American's counterclaims seek two categories of damages: compensatory damages, including "actual damages, economic damages, out-of-pocket damages, benefit of the bargain damages, lost profits, cost of substitute performance, loss of good will, and consequential damages," and exemplary damages under § 41.003(a)(1) of the Texas Civil Practices and Remedies Code. (Docket Entry No. 9, at pp. 13–14).

ENGlobal moved for partial summary judgment that Native American may not recover any of the damages sought in its counterclaims, except for compensatory damages. (Docket Entry No. 28). The contract contains a "mutual waiver" provision that limits liability for certain types of damages:

> *Mutual Waiver*: To the fullest extent permitted by law, Client and Consultant waive against each other, and the other's employees, officers, directors, members, agents, insurers, partners, and consultants, any and all claims for or entitlement to special, incidental, indirect, or consequential damages arising out of, resulting from, or in any way related to the Work, regardless of the cause of action under which the damages are brought.

(Docket Entry No. 27, Ex. A at p. 5). The contract does not define "consequential" or "special" damages.

ENGlobal argues that the mutual waiver provision bars Native American's counterclaims for compensatory damages, consequential damages, exemplary damages, lost profits, and damages for loss of good will. Native American responds that: (1) "consequential damages" and "special damages" are interchangeable terms for a distinct category of damages under Texas law, and asks

the court to interpret "consequential damages" in the waiver provision as prohibiting only that category of damages; (2) the mutual waiver provision does not prohibit exemplary damages; (3) although the mutual waiver provision prohibits claims for consequential damages, under Texas law, lost profits can be either direct or consequential damages and are properly categorized here as direct damages; and (4) the mutual waiver provision is unenforceable because the duty not to fraudulently procure a contract is separate and independent from the duties established by that contract.

### i.      Consequential or Special Damages

The appropriate measure of damages is a question of law.  Under Texas law, "damages may be characterized as either direct or consequential (special)."  DAVID R. DOW & CRAIG SMYSER, 49 TEXAS PRACTICE: CONTRACT LAW § 10.8.  "Actual" damages may include both direct and consequential damages. *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 314 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997)).  "Actual damages" and "compensatory damages" are synonymous terms.  *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 185 n.25 (Tex. App.—Fort Worth 2012) (collecting authority).  Direct damages naturally result from the breach and "do not arise from any special conditions that would increase the defendant's liability, about which the defendant should have had notice at the time the contract was made." DOW & SMYSER, CONTRACT LAW, § 10.8.  Consequential or special damages, in contrast, are those that result "naturally but not necessarily from the wrongful act because they require the existence of some other fact beyond the relationship of the parties." *Manuel*, 362 S.W.3d at 180.  Direct damages "necessarily result" from the breach; consequential damages "are contingent."  *Id.*

Native American seeks "compensatory damages, including actual damages, economic damages, out-of-pocket damages, benefit of the bargain damages, lost profits, cost of substitute performance, and consequential damages." (Docket Entry No. 9, at p. 13). Although Native American's counterclaim lists "consequential" damages under the category of "compensatory" damages, the damages Native American seeks are properly categorized as consequential. The mutual waiver provision prohibits those damages. (Docket Entry No. 27, Ex. A at p. 5). Native American is not prohibited from seeking all "compensatory" damages because those encompass actual damages, which the mutual waiver provision does not prohibit. *See Manuel*, 362 S.W.3d at 185 n.25. But Native American's claims for consequential damages fail as a matter of law because the mutual waiver provision expressly prohibits them. ENGlobal's motion for partial summary judgment is granted in part; Native American cannot pursue its claim for consequential damages.

### ii.     Lost Profits

Lost profits consist of damages "for the loss of net income to a business." *Cherokee Cty.*, 305 S.W.3d at 314. Lost profits can be either direct or consequential damages, depending on the circumstances. *Id.* Profits lost on the "contract itself" are direct damages; profits lost on "other contracts or relationships resulting from the breach may be classified as 'indirect' or consequential damages." *Id.* Lost profits on other contracts that "represent the benefit-of-the-bargain measure of damages required to restore the plaintiff to the economic position he would have enjoyed if the contract had been performed" are direct damages when they can be "conclusively presumed" to have been foreseen by the parties "as a usual and necessary consequence of the breach." *Manuel*, 362 S.W.3d at 181 (citing *Cherokee Cty.*, 305 S.W.3d at 314). Texas courts have construed damages-limitation clauses to preclude "both direct and consequential lost profits where the clauses expressly

9

waived damages for either lost profits or consequential damages," but have "held that direct lost profits were not precluded where only 'consequential' damages, either generally or 'including' lost profits were waived." *Id.* at 183.

Native American alleges that ENGlobal's contract breach caused Native American to lose profits on its contract with a third party, Orthios, for the biomass powerplant project. Native American had subcontracted with ENGlobal to provide consulting and engineering services for that project. Native American argues that because the contract between Native American and ENGlobal specifically refers to terms in the contract between Native American and Orthios about the work and scheduling for the powerplant project, Native American's lost profits are the "usual and necessary" consequences of ENGlobal's breach. The subcontracting arrangement meant that the profits on the Native American contract with Orthios were "built in" to Native American's contract with ENGlobal and, according to Native American, are appropriately categorized as direct damages.

ENGlobal argues that Native American's lost profits on the contract with Orthios for the powerplant are consequential damages rather than direct damages because they are "incidental" to the contract between ENGlobal and Native American. The contract between ENGlobal and Native American is for services specified in the contract between Native American and Orthios. For example, the "Scope of Work" section in the ENGlobal contract with Native American provides extensive details about the "Phase 1 Engineering Estimate" for the "FEED study described in Schedule 1" for the Anglesey Biomass CHP Plant. (Docket Entry No. 28, Ex. A at p. 13). The contract between Native American and Orthios established the schedule for Native American to complete its work. Native American subcontracted that work to ENGlobal. The Native American contract with Orthios states that: "[t]he scope of the Front End Engineering Design (FEED Study)

Agreement Activities and Deliverable Outputs is detailed in Schedule 1 and shall include the technical and commercial development of the major package plant to the point where the Contract is in a position to place orders with Subcontractors and/or Suppliers for these items of plant and equipment consistent with . . . this document." (*Id.* at p. 25).

ENGlobal's contract with Native American was for work subcontracted from the Native American contract with Orthios for the powerplant project. That contract provided the time frame and specifications for ENGlobal's performance under its subcontract with Native American. ENGlobal's alleged breach of the subcontract with Native American resulted in Native American breaching its contract with Orthios because ENGlobal's alleged breach caused Native American to miss the deadlines specified in the Native American contract with Orthios and lose that contract. Native American's lost profits on the contract for the powerplant project represent the "benefit-of-the-bargain measure" necessary to restore Native American to the economic position it would have occupied had ENGlobal performed. Because Native American's lost profits on its contract with Orthios were foreseeable as a "usual and necessary consequence" of ENGlobal's breach of its subcontract with Native American, the claim for lost profits is appropriately categorized as one for direct rather than consequential damages. The claim is not foreclosed by the mutual waiver provision. *See Manuel*, 362 S.W.3d at 183.

ENGlobal's motion for partial summary judgment on this issue is denied.

### iii.   Exemplary Damages

Native American seeks exemplary damages under § 41.003(a)(1) of the Texas Civil Practice and Remedies Code, which allows an award of exemplary damages "only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of

exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." The mutual waiver provision prohibits consequential, special, and indirect damages, but it does not mention "exemplary damages."

ENGlobal argues that exemplary damages are special damages that are prohibited by the mutual waiver provision. It relies on a Texas Court of Appeals case stating that "[e]xemplary damages are special damages that must be supported by express allegation of willfulness, malice, or gross negligence that go beyond the allegation necessary to recover compensatory damages." *In re Jacobs*, 300 S.W.3d 35, 43 (Tex. App.—Houston [14th Dist.] 2009).

Native American responds that exemplary damages are not special damages and that ENGlobal's reliance on *In re Jacobs* conflates the fair-notice pleading rules with the substantive common-law rules on the recoverability of damages. Native American argues that *In re Jacobs* was limited to the specific context of satisfying the fair-notice pleading standards under Texas law and does not apply to contractual limitations on damages.

Although Native American argues that exemplary damages are not a category of special damages, it cites no cases in support. *In re Jacobs* does discuss the fair-notice pleading standards under Texas law. But the court's explanation that exemplary damages "must be supported by express allegations of willfulness, malice, or gross negligence that go beyond the allegations necessary to recover compensatory damages" does not limit the holding that "exemplary damages are special damages." *In re Jacobs*, 300 S.W.3d at 43. Treating exemplary damages as a form of special damages that must be pleaded with specific factual allegations is also consistent with § 41.003(a)(1) of the Texas Civil Practice and Remedies Code, which requires proof "by clear and convincing evidence" that the harm alleged was a result of fraud.

Native American's claim for exemplary damages is a claim for special damages and barred by the mutual waiver provision.  ENGlobal's motion for partial summary judgment is granted as to this claim.

### iv.    Loss of Good Will

Native American also seeks damages for loss of good will.  The parties dispute whether damages for loss of good will are categorized as special damages, as ENGlobal asserts, or as direct damages, as Native American asserts.

Consequential or special damages are those that result "naturally, but not necessarily, from the wrongful act."  *Manuel*, 362 S.W.3d at 180.  A claim for lost good will or for loss of business reputation, is a claim for consequential or special damages.  *See Kische USA, LLC v. Simsek*, 2016 WL 6273261, at *7 (W.D. Wash. June 29, 2016) ("Injury to a business's goodwill generally constitutes special damages, and, as such, must be pleaded with particularity."); *see also Sw. Bank & Tr. Co. v. Executive Sportsman Ass'n*, 477 S.W.2d 920, 928 (Tex. App.—Dallas 1972).

Native American's claim for damages for loss of good will is one for special damages that do not "necessarily" result from ENGlobal's alleged breach of contract.  Native American cites no cases for the proposition that a damages claim for loss of good will is not a claim for consequential or special damages.  Any good will Native American lost from ENGlobal's alleged breach is an indirect and attenuated result of that breach.  The mutual waiver provision prohibits claims for special, indirect, and consequential damages; Native American's claim for loss of good will seeks those types of damages.  ENGlobal's motion for partial summary judgment is granted on this issue.

### v.    Fraudulent Inducement

Finally, Native American argues that damages waiver or limitation provisions are not enforceable in contracts procured by fraud.  Native American alleges that ENGlobal made fraudulent misrepresentations that induced Native American to enter the contract.  Native American argues that the mutual waiver provision is unenforceable because "a party is not bound by a contract procured by fraud," and because the duty "not to fraudulently procure a contract is separate and independent from the duties established by the contract itself."  (Docket Entry No. 30, at p. 8) (citing *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 46–48 (Tex. 1998)).

Although Native American has alleged that the contract was procured by fraud, it has not moved for summary judgment on that claim.  The only record evidence is the signed contract, which appears to be between sophisticated and counseled parties.  The court cannot, based on the present record, find fraudulent inducement and cannot grant summary judgment that the mutual waiver provision is unenforceable.

## IV.  Conclusion

ENGlobal's motion for summary judgment, (Docket Entry No. 27), is denied; the motion for partial summary judgment, (Docket Entry No. 28), is granted in part and denied in part.  Native American's claims for consequential and exemplary damages and loss of good will are barred by the mutual waiver provision and fail as a matter of law.  The mutual waiver provision does not bar Native American's claims for direct damages and loss of profits, and those claims may proceed.

SIGNED on October 4, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge