**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ENGLOBAL U.S. INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2746 |
| | § | |
| | § | |
| NATIVE AMERICAN SERVICES | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

ENGlobal U.S. Inc. and Native American Services Corporation entered into a subcontract under which ENGlobal agreed to provide consulting and engineering services for a biomass-powerplant project in the United Kingdom. ENGlobal alleges that Native American breached the contract by failing to pay ENGlobal's outstanding invoices; fraudulently induced ENGlobal to enter the contract by making false representations about the scope of the work; made negligent misrepresentations during the contract negotiations; and is liable for the value of ENGlobal's work under quantum meruit. Native American counterclaimed for breach of contract, fraudulent inducement, negligent misrepresentation, and money had and received, alleging that ENGlobal fraudulently induced Native American to enter the contract, then breached by failing to meet deadlines or meet the contract requirements for progress on the work.

After discovery, ENGlobal moved for summary judgment granting its breach-of-contract claim and for partial summary judgment dismissing Native American's counterclaims. The court issued a Memorandum and Opinion denying ENGlobal's motion for summary judgment and

1

granting in part and denying in part the motion for partial summary judgment. The court held that the contract's mutual-waiver provision barred Native American's claims for consequential damages, exemplary damages, and loss of good will, but did not bar Native American's claims for direct damages and loss of profits. (Docket Entry No. 42).

After completing discovery, the parties filed: (1) ENGlobal's second motion for summary judgment; (2) ENGlobal's motion to exclude Native American's expert testimony; (3) ENGlobal's motion to designate a responsible third party; (4) Native American's motion to exclude the testimony of ENGlobal's damages expert; (5) Native American's motion for partial summary judgment dismissing ENGlobal's affirmative claim for breach of contract; and (6) Native American's motion to exclude the testimony of ENGlobal's technical experts. (Docket Entries No. 56, 58, 60, 62, 63, 65).

Based on the pleadings, motions, responses, replies, the record, and the applicable law, ENGlobal's second motion for summary judgment, (Docket Entry No. 56); ENGlobal's motion to exclude Native American's expert testimony, (Docket Entry No. 58); ENGlobal's motion to designate a responsible third party, (Docket Entry No. 60); Native American's motions to exclude the testimony of ENGlobal's damages and technical experts, (Docket Entries No. 62, 65); and Native American's motion for partial summary judgment on the breach-of-contract claim, (Docket Entry No. 64), are denied. The reasons for these rulings are explained below.

I.      **The Summary Judgment Motions**

        A.      **The Summary Judgment Legal Standard**

        "Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven, Miss.*, 884

F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive

a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

**B.      ENGlobal's Second Motion for Summary Judgment**

ENGlobal seeks summary judgment dismissing Native American's counterclaims for fraudulent inducement, negligent misrepresentation, breach of contract, and money had and received. (Docket Entry No. 56). Native American argues in response that there are genuine factual disputes material to determining whether the counterclaims may proceed. (Docket Entry No. 66).

The summary judgment record consists of the follows materials:

•      deposition testimony of James Bortz, an ENGlobal employee who worked on the biomass-powerplant project, (Docket Entry No. 56, Ex. A);

•      deposition testimony of R. Bruce Williams, ENGlobal's corporate representative, (*Id.*, Ex. B);

•      deposition testimony of Dane Ash, Native American's project manager, (*Id.*, Ex. C);

•      deposition testimony of Rick Luna, Native American's corporate representative, (*Id.*, Ex. D);

- deposition testimony of W.N. Scott, an ENGlobal employee, (Docket Entry No. 66, Ex. 1);

- deposition testimony of Ray Bliesmer, ENGlobal's corporate representative (*Id.*, Ex. 2);

- deposition testimony of William Tyburk, an ENGlobal employee, (*Id.*, Ex. 5);

- ENGlobal's meeting minutes for the biomass project's "kick-off" meeting, (*Id.*, Ex. 6); and

- an email chain, dated March 2, 2016, between ENGlobal and Native American about the "Project Execution Plan," (*Id.*, Ex. 7).

### 1. The Fraudulent Inducement Counterclaim

The elements of a fraud cause of action under Texas law are: (1) a material misrepresentation; (2) that was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) suffered injury. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001). Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract, and the elements of fraud must be established as they relate to an agreement between the parties." *West v. Northstar Fin. Corp.*, 2010 WL 851415, at *5 (Tex. App.—Ft. Worth Mar. 11, 2010) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)). Although fraudulent inducement has the same elements as common-law fraud, it must also involve "a promise of future performance made with no intention of performing at the time it was made." *Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015).

ENGlobal argues that there is no summary judgment evidence showing that it made a false statement of fact or promised to perform with no intention of performing. ENGlobal cites deposition testimony of Native American's project manager, Dane Ash, that some members of the ENGlobal project team were "good people" and "they are competent." (Docket Entry No. 56, Ex. C). Ash also

stated that the ENGlobal project team "did not want to follow the scope of work and do the specific work that was being asked for. They wanted to go out and design a plant." (*Id.*).

Native American argues that ENGlobal made assurances that it was willing and able to perform the contract scope of work, despite knowing that it was not able to perform. (Docket Entry No. 66). According to Native American, ENGlobal's internal disorganization and refusal to adequately staff the biomass-project team as promised led to the termination of the contract. In support, Native American cites precontract representations that ENGlobal had conducted its own diligence on the biomass project and was aware of and able to perform the contractual scope of work, when it did not understand the scope of work or the project deadlines. Native American argues that ENGlobal falsely represented its willingness to comply with Native American's requirement that all of ENGlobal's project team members be located in Denver; that ENGlobal falsely represented that it was prepared to immediately begin the contract work, but omitted to state that the "team" had not met and had not discussed the feasibility of the scope of work; that ENGlobal falsely represented that its project team had experience with similar biomass projects, when ENGlobal had no experience; and that ENGlobal put James Bortz, who had a reputation for belligerence and isolating team members, in charge of the project, but without disclosing this to Native American.

Native American has pointed to summary judgment evidence supporting its fraudulent-inducement claim against ENGlobal, citing evidence that ENGlobal made material precontract representations that it was involved in "active discussion of ENGlobal's scope of work" under the contract, (*Id.*, Ex. 4 at 27), and that ENGlobal knew, but did not inform Native American, that performing some of the contract terms was "impossible," (*Id.*, Ex. 1 at 60–61). ENGlobal disputes

this factual allegation, citing evidence that Native American's representative thought the members of the ENGlobal project team were "competent." (Docket Entry No. 56, Ex. C). The summary judgment evidence includes factual disputes material to determining whether ENGlobal fraudulently induced Native American to enter the subcontract.

Native American also cites evidence showing that ENGlobal knowingly made false representations about its ability to provide the services the contract required. ENGlobal argues that the representations were not false when made. The record evidence showing that ENGlobal knew its performance of some of the contract terms was "impossible" is enough to show "a promise of future performance made with no intention of performing at the time it was made." *Zorilla*, 469 S.W.3d at 153. Drawing all reasonable inferences in favor of Native American, the nonmovant, ENGlobal has not met its burden to show that there are no factual disputes material to determining Native American's counterclaim for fraudulent inducement.

ENGlobal's second motion for summary judgment dismissing Native American's counterclaim for fraudulent inducement is denied.

### 2. The Negligent Misrepresentation Counterclaim

Under Texas law, the elements of negligent misrepresentation are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *LHC Nashua P'Ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 458 n.8 (5th Cir. 2011) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

ENGlobal argues that there is no record evidence showing it gave Native American false information. Native American cites record evidence showing that: (1) "ENGlobal affirmatively misrepresented its entire team was actually resident in the ENGlobal Denver office" (Docket Entry No. 66, Ex. 1); (2) ENGlobal misrepresented that Bill Scott, an ENGlobal team member who had experience with biomass projects, continued to be involved, when he had been taken off the project, (Exs. 1, 2); (3) ENGlobal misrepresented the status of the contract work in its weekly progress reports to Native American, (Exs. 2, 3, 8); and (4) ENGlobal billed Native American for work it never performed, (Ex. 3).

Like the claim for fraudulent inducement, the claim for negligent misrepresentation turns on whether the information ENGlobal provided to Native American was true or false at the time and whether ENGlobal knew or should have known of the falsity. For example, Native American argues that ENGlobal represented that its entire project team would be "actually resident" in ENGlobal's Denver office. Native American cites deposition testimony that Bill Scott worked in the Denver office only three days a week, on Tuesdays through Thursdays. (Ex. 1 at 50). Whether Scott's part-time, rather than full-time, presence at the Denver office shows that ENGlobal's representation that the project team would be "actually resident" in that office was false, whether ENGlobal used reasonable care in making that representation, and whether Native American justifiably relied on that representation, are factual disputes that cannot be decided on summary judgment. ENGlobal's motion for summary judgment dismissing Native American's counterclaim for negligent misrepresentation is denied.

### 3. The Breach-of-Contract Counterclaim

ENGlobal argues that the subject of the contract—construction of a biomass power plant—is so technical as to require expert testimony, because a "lay person's general experience and common sense will not enable that person to determine causation." *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). According to ENGlobal, Native American's breach-of-contract counterclaim must fail because Native American has not offered expert testimony to support the causation element of that claim. ENGlobal argues that summary judgment is warranted because Native American has not offered expert testimony; ENGlobal has not cited record evidence showing a lack of disputed material facts.

ENGlobal cites *Brookshire Bros.* for the proposition that expert testimony is necessary for cases involving technical issues. That case involved a negligence claim for personal injuries arising from chemical exposure at a workplace. ENGlobal quotes a paragraph stating that:

> [t]o establish causation in a personal-injury suit, a plaintiff must prove that the defendant's conduct caused an event and that this event caused the plaintiff to suffer compensable injuries. When a lay person's general experience and common sense will not enable that person to determine causation, expert testimony is required.

*Id.* The reasoning is limited to causation in specific types of personal-injury cases in which a lay person cannot determine causation. Although the subject matter of the contract here is technical, the contract itself is not. Texas courts have held that expert testimony on causation is generally not required for breach-of-contract cases. *See Port of Hous. Auth. of Harris Cty. v. Zachry Const. Corp.*, 513 S.W.3d 543, 560 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Our research has not revealed a breach of contract case requiring expert testimony to establish a causal link between the breach that occurred and the resulting damages. Because the Port has not cited, nor have we found, any cases requiring expert testimony to establish that a party's breach of contract caused the damages awarded by the jury, we decline to impose such a requirement in this case."). Expert

testimony is not required to prove the causation element of this breach-of-contract claim.

Native American cites record evidence showing that ENGlobal did not perform under the contract terms, failed "to assemble or manage a Project team capable of handling the Scope of Work," and concealed those problems from Native American. For example, Native American cites the testimony of Rick Luna, Native American's corporate representative, that ENGlobal did not complete the contract work. Near the end of the relationship between Native American and ENGlobal, Luna asked Bruce Williams, ENGlobal's chief operating officer, to provide invoices for the deliverable work that ENGlobal had completed. Williams promised to do so, but he did not provide a list of deliverables, informed Luna that ENGlobal did not have a list of deliverables it had completed, and instead asked Native American to pay ENGlobal's invoice in full. (Ex. 9 at 150–151). This evidence shows that there are disputed fact issues material to Native American's breach-of-contract counterclaim.

Summary judgment on Native American's breach-of-contract counterclaim is denied because expert testimony is not required and there is conflicting record evidence material to determining whether Native American or ENGlobal breached the contract.

### 4. The Counterclaim for Money Had and Received

ENGlobal argues that Native American's counterclaim for money had and received fails as a matter of law because an equitable claim to prevent unjust enrichment cannot proceed when there is a valid written contract between the parties.

Native American responds that it is asserting its claim for money had and received in the alternative to the breach-of-contract claim. Native American is not seeking double recovery for the same loss, but rather is "advancing two different legal theories" as to that loss. Native American

cites Rule 8(d)(3), which allows a party to "state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3). It also cites *Baisden v. I'm Ready Prods., Inc.*, 2008 WL 2118170, at *9–10 (S.D. Tex. May 16, 2008), which held that a claim for unjust enrichment was "not subject to dismissal merely because the subject matter of the claim may be covered by a written agreement but, instead, that pursuant to Rule 8(d)(2), a claim for unjust enrichment may properly be pleaded in addition and/or as an alternative to a breach of contract claim." ENGlobal did not address these arguments in its reply brief.

In *Baisden*, the court considered and rejected the same argument that ENGlobal makes here, that a written agreement precludes equitable claims based on conduct related to that agreement. Even though there is a written contract, Native American's claim for money had and received may proceed, in the alternative, under Rule 8(d)(2).

### B.    Native American's Motion for Partial Summary Judgment

Native American moved for partial summary judgment on ENGlobal's breach-of-contract claim, arguing that ENGlobal has suffered no damages from Native American's alleged breach of contract. (Docket Entry No. 63). The summary judgment record on this point includes the following:

- deposition testimony of R. Bruce Williams, ENGlobal's corporate representative, (Docket Entry No. 63, Ex. 1; Docket Entry No. 71, Ex. B);

- deposition testimony of Ray Bliesmer, ENGlobal's corporate representative, (Docket Entry No. 63, Ex. 2);

- deposition testimony of Dane Ash, Native American's project manager, (*Id.* Ex. 3);

- deposition testimony of Rick Luna, Native American's corporate representative, (*Id.* Ex. 4);

- a declaration of Steven B. Harris, Native American's counsel, (*Id.* Ex. 5);

- an email from Rick Luna, Native American's chief executive officer, to Mike Harrison, Bruce Williams, and Bill Tyburk, ENGlobal employees, dated June 7, 2017, with an attached contract-termination letter, (*Id.* App. A);

- communications between ENGlobal and Native American, (*Id.* Apps. B–F); and

- deposition testimony of William Tyburk, an ENGlobal employee, (Docket Entry No. 71, Ex. A).

ENGlobal's breach-of-contract claim centers on Native American's failure to pay outstanding invoices for materials and hours spent performing the contract work. The outstanding invoices listed the hours that ENGlobal employees billed to the Native American contract. Native American argues that these invoices are for time and materials outside the scope of the contract because the contract states that the "[c]onsultant will be paid by Client for Services rendered to the date of termination." (Docket Entry No. 1, Ex. A). According to Native American, because ENGlobal did not perform the "services" required by the contract, the invoices listing the hours ENGlobal worked are "interim billings" and not invoices for services. (Docket Entry No. 63). Native American contends that because ENGlobal did not finish the contract's deliverable tasks, it did not provide services under the contract.

ENGlobal responds that the hours it billed for consulting and engineering work on the powerplant project are "services" under the contract terms. Although the contract was terminated before ENGlobal completed the contract work and the contract's "deliverable" tasks, the hours ENGlobal spent on engineering and consulting for the project are nonetheless "services" for which it is entitled to payment. (Docket Entry No. 71).

ENGlobal has the better argument. The contract defines "services" as "projects . . . requiring consulting and engineering services." (Docket Entry No. 1, Ex. A). One of these projects was titled "Anglesey Biomass CHP Plant: Phase I Engineering Estimate." (*Id.*). The scope of work for that

project states that "[e]ngineering services and deliverables will be provided on a Time & Materials Basis limited to the estimated value below. . . . $1,879,800.00." (*Id.*). The contract also states that "[f]ees and costs shall be invoiced monthly . . . according to the categories and basis for charges set forth in ENGlobal's Schedule of Professional Charges. . . ." (*Id.*). The contract incorporated ENGlobal's Rate Sheet, attached to the contract as Appendix B, which stated that ENGlobal would bill Native American at "fixed hourly rates." (*Id.*). The contract also states that on contract termination, Native American would pay ENGlobal for "services rendered" and "all costs incurred" to the date of termination. The charges "for such termination shall be paid according to Appendices 'A' and 'B.'" (*Id.*).

The hours ENGlobal spent on the contract work are "services" under the contract terms. ENGlobal's fee schedule, referred to in and attached as an appendix to the contract, states that Native American would be billed at "fixed hourly rates" for engineering services and that the deliverables would "be provided on a Time & Materials Basis limited to the estimated value below." (*Id.*). These contract provisions indicate that the hours ENGlobal spent on consulting services for the powerplant project, even if the contract work was not completed or the contract was terminated, are "services rendered" and "costs incurred" that ENGlobal would bill to Native American.

The facts as to the parties' performance under the contract and the existence and extent of damages to ENGlobal are disputed fact issues. ENGlobal points to summary judgment evidence that it worked in good faith and billed any hours for the time it actually spent on the contract work before contract termination. ENGlobal argues that, even though the contract was terminated early, its hours billed for consulting and engineering services were "services" under the contract terms. Native American argues that ENGlobal performed none of the contract work because it failed to complete

the contract's "deliverables." Although Native American argues that ENGlobal did not complete any of the contract work, ENGlobal has set out conflicting record evidence showing that its unpaid invoices were for work on the powerplant project. When asked whether ENGlobal "invoice[d] NASCO on a time and material basis that's referred to in the industry as T&M" for the project and whether ENGlobal "had a budget which constituted a cap for the original scope of work against which you billed on a T&M basis," William Tyburk, an ENGlobal representative, answered affirmatively.

Native American's motion for partial summary judgment, (Docket Entry No. 63), is denied because there are factual disputes material to determining whether and to what extent ENGlobal performed under the contract and whether ENGlobal breached.

## II.     The Motions About Expert Testimony

### A.     ENGlobal's Motion to Exclude Native American's Expert Testimony

ENGlobal moved to exclude the testimony of Donald Holman and Jeffrey A. Compton, Native American's experts. (Docket Entry No. 58).

#### 1.     Donald Holman

ENGlobal argues that Holman, whom Native American designated by the deadline to designate rebuttal experts, is an expert on Native American's affirmative claims rather than a rebuttal expert. ENGlobal argues that Holman's designation was untimely because he is not a rebuttal expert. Without citing Holman's expert report, ENGlobal argues that Holman stated in the report that "he cannot offer substantive comments to rebut ENGlobal's experts, and instead focuses his report almost exclusively on opining as to the alleged fault of ENGlobal." (*Id.* at 6).

Native American responds that Holman is a rebuttal expert, citing his report stating that he

will "provide rebuttal testimony in response to the report and opinions of [ENGlobal's experts]." (Docket Entry No. 52 at 2). Native American argues that Holman's findings and conclusions are "directly in response to ENGlobal's expert report on construction issues," and asserts that Holman's comments on the "lack of analysis" in one of ENGlobal's expert reports is consistent with rebutting ENGlobal's expert testimony. (*Id.*).

ENGlobal's only argument against allowing Holman to testify is that he was designated after the deadline to designate experts other than for rebuttal. The argument assumes that Holman is not properly designated as a rebuttal expert. Both the content of Holman's report, which addresses ENGlobal's experts, and the statement that Holman "will provide rebuttal testimony in response to the report and opinions of [ENGlobal's experts]," show that he is a rebuttal expert and was timely designated. ENGlobal's motion to exclude Holman's testimony is denied.

## 2. Jeffrey A. Compton

Compton is Native American's damages expert. His expert report states that he was "asked to assume that, had ENGlobal not breached its subcontract, the FEED agreement would have proceeded to successful completion in accordance with its terms." (Docket Entry No. 50). ENGlobal argues that Compton's opinions are based on two unsupported assumptions. The first is that ENGlobal alone breached the contract. ENglobal argues that this assumption is unreasonable because "there is no evidentiary support" for Native American's breach-of-contract claim. The second assumption is that Native American "would have been awarded an engineering, procurement and construction ('EPC') contract on the project had the FEED Agreement been properly concluded but for the breach by ENGlobal." (Docket Entry No. 50). ENGlobal argues that this assumption is contradicted by testimony from Native American's witnesses, and there is no evidence that Native

American would have been awarded the EPC contract if ENGlobal had completed the contract work.

Native American responds that damages experts may rely on assumptions about liability issues; that the record supports the assumptions Compton made; and that ENGlobal's criticisms go to the weight of Compton's testimony, not admissibility. According to Native American, Compton's first assumption, that the biomass project would have been completed had ENGlobal not breached the contract, is consistent with the record evidence and Native American's position that ENGlobal breached the contract. Native American contends that Compton's second assumption, based on a lost-profits claim for a future EPC contract, takes Compton's expert testimony out of context by omitting a sentence. That sentence is the last one in the following paragraph:

> I also understand that NASCO is making a claim for lost profits on the grounds that it would have been awarded an engineering, procurement and construction ("EPC") contract on the project had the FEED Agreement been properly concluded but for the breach by ENGlobal. At this stage, I do not have enough information for a lost profits analysis to be undertaken with regards to the EPC contract.

(Docket Entry No. 50). The last sentence shows that Compton did not assume that Native American would have been awarded an EPC contract if ENGlobal had performed on the contract with Native American.

"[A]n expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge or observation." *Wellogix v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013) (quoting *Daubert*, 509 U.S. at 592). "[T]he basis of an expert's opinion usually goes to the weight, not the admissibility, of the testimony . . . ." *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012). Occasionally, "the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Id.* "Expert testimony falls in this category when that testimony would not actually assist the jury in arriving at an intelligent and

sound verdict." *Id.* "Cross-examination at trial, however, is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of the jury." *Dearmond v. Wal-Mart La. LLC*, 335 F. App'x 442, 444 (5th Cir. 2009).

"Experts are permitted to assume the fact of liability and opine about the extent of damages." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792 (N.D. Tex. 2013). An expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible. *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 F. App'x 727, 733 (5th Cir. 2008). When "the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Id.* (quoting *Micro Chem., Inc. v. Textron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)).

Compton's first assumption, that ENGlobal was the only party to breach the contract, is an assumption about liability. As Native American's damages expert, it is permissible for Compton to assume that ENGlobal, and not Native American, breached the contract. *Orthoflex*, 986 F. Supp. 2d at 792. The record undermines ENGlobal's argument that Compton assumed that Native American would have been awarded an EPC contract if ENGlobal had completed the contract work. Compton specifically stated that "[a]t this stage, I do not have enough information for a lost profits analysis to be undertaken with regards to the EPC contract." (Docket Entry No. 50). Because Compton's expert report did not rely on that assumption, his testimony about lost profits is permissible.

ENGlobal's motion to exclude the expert testimony of Jeffrey Compton, (Docket Entry No. 58), is also denied.

### B. Native American's Motions to Exclude the Testimony of ENGlobal's Experts

### 1. Kevin Maxwell, Rob Ezold, and Michael Nagler

Kevin Maxwell, Rob Ezold, and Michael Nagler are ENGlobal's technical experts. They signed the "Vertex Report," a report the Vertex Companies prepared for ENGlobal. (Docket Entry No. 54, Ex. 1). Native American objects to many conclusions in the report on the grounds that they are legal conclusions or based on speculation. (Docket Entry No. 65). ENGlobal responds that the conclusions Native American objects to are taken out of context and are not improper legal conclusions. (Docket Entry No. 67).

Native American submitted a four-page list of conclusions it objects to. Many are taken from the report's "Background" section, which sets out the facts the experts relied on and summarizes their review of the filings and discovery in this case. These Background "conclusions" are not objectionable because they are just that—Background.

Of the conclusions that are not in the Background section, the following opinions come closest to improper legal conclusions:

- "Furthermore, VERTEX contends that no evidence has been presented to show that ENG did not 'exercise ordinary and professional skill and diligence and conform to generally accepted industry standards in performing the Work." (Docket Entry No. 54, Ex. 1 at 11);

- "VERTEX disagrees with any statement that ENG did not meet their contractual deadlines, as ENG was terminated 62% into and 10 weeks prior to the contractual completion date." (*Id.*);

- "As indicated above, ENG responded to the May 31, 2016 NASCO 'Notice of Default' on June 6, 2016. Within the responses that ENG provides to NASCO, there are several instances in which ENG responds that they are waiting on NASCO to provide necessary information to ENG to complete the task and therefore ENG should not be held liable. The following are some examples of these comments in the ENG response . . . ." (*Id.* at 21); and

- "ENG had been providing NASCO with weekly reports. Based on the comment by Orthios, it appears that NASCO had not been forwarding weekly reports to Orthios. This breach is due to NASCO's lack of performance and not due to ENG's work, since ENG had been providing NASCO with these weekly reports." (*Id.* at 28).

An expert opinion is not inadmissible "just because it embraces an ultimate issue," FED. R. EVID. 704, but the rule "does not allow an expert to render conclusions of law." *Snap–Drape, Inc. v. Comm'r of Internal Revenue*, 98 F. 3d 194, 198 (5th Cir. 1996). "This rule and the other Federal Rules of Evidence 'afford ample assurances against the admission of opinions which would merely tell the jury what result to reach.'" *United States v. Thomas*, 847 F.3d 193, 206 (5th Cir. 2017) (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 n.4 (5th Cir. 1992)).

The report includes conclusions that set out the facts on which the experts relied and explain how those facts support their opinions. The conclusions are not improper legal conclusions. Rather, they are opinions on ultimate issues, which Rule 704 permits. At trial, Native American may cross-examine the experts about the assumptions and bases for these opinions.

The motion to exclude the testimony of Kevin Maxwell, Rob Ezold, and Michael Nagler, (Docket Entry No. 65), is denied.

### 2.     Ron E. Boyle

Ron Boyle is ENGlobal's rebuttal damages expert. Native American moved to exclude the "Background" section of Boyle's report under Rule 703. (Docket Entry No. 62). Boyle's report states that "I have reviewed documents provided to me in this case. These materials include the Report of Jeffrey A. Compton, the VERTEX Report dated 1-17-18 and the Deposition of Rick Luna. These items are exhibits to this report and are sources that I relied upon in reaching my conclusions." (Docket Entry No. 53). The Background section of the report states:

**Background**

According to information retrieved from the VERTEX Report, the Project is a proposed 299 MWe Biomass CHP Plant, a combined biomass power and flood plant, located on the Isle of Anglesey in Holyhead, Wales, UK. Orthios is the owner of the

Project site, which is located on the former Anglesey Aluminum site. On January 26, 2016, NASCO entered into a "Front End Engineering Design (FEED Study) Agreement" with Orthios for the Project. On February 15, 2016, NASCO and ENG entered into an "Agreement for Consulting and Engineering Services" (Agreement) for ENG to complete a 26-week Phase 1: Engineering Estimate for the Project.

A "Project Kick-Off Meeting" for the FEED Study was conducted on February 15 & 16, 2016 in Kellogg, ID. Representatives of NASCO and ENG attended the Kick-Off Meeting. Throughout the next few months, ENG performed work (services) for the Project. On April 13, 2016, NASCO sent ENG a report that outlined "problems with backup and non-responsiveness to include supporting documentation" regarding ENG's work on the project. On May 31, 2016, NASCO sent ENG a "Notice of Default" letter outlining conditions that NASCO determined ENG was "failing to perform pursuant to its contractual obligations in failing to timely prosecute its work and causing project delays." The "Notice of Default" letter requested a response from ENG no later than June 6, 2016. On June 6, 2016, ENG responded to the "Notice of Default" letter with a 16-page detailed response, plus attachments, regarding the issues outlined in the May 31, 2016 NASCO "Notice of Default" letter. On June 7, 2016 NASCO terminated the contract between NASCO and ENG. On July 19, 2016, Orthios terminated their contract with NASCO citing several breaches of the January 28, 2016 contract between NASCO and Orthios.

The NASCO/ENG Agreement provided an option for the termination of the Agreement that stipulated that the Client (NASCO) will pay the will pay the Consultant (ENG) for Services rendered to the date of termination. However, NASCO has failed to pay three separate ENG invoices totaling $598,900.56 for Services performed by ENG up to the date of termination. Due to the lack of payment for Services, ENG field "Plaintiff's Original Petition" for NASCO's breach of contract in its failure to pay the balance due to ENG. NASCO subsequently filed a counterclaim, alleging lost profits "in an amount not yet ascertained" due to ENG's failure to perform its work as agreed upon in the Agreement.

(Docket Entry No. 53).

Native American argues that Boyle based the Background section on the Vertex Report, prepared on ENGlobal's behalf. The facts set out in the Vertex Report are repeated in the Background section of Boyle's report, with no statement that they were taken from the Vertex Report rather than from his own personal knowledge. Native American contends that this makes the Background section inadmissible because it contains hearsay.

ENGlobal responds that: (1) Boyle's report notes that the information he relied on came from the Vertex Report, (Docket Entry No. 53 at 2) ("According to information retrieved from the VERTEX Report . . . ."); (2) the Background section of Boyle's report does "not go to the substance" of the report, but is a summary of the factual information prepared by ENGlobal, which Boyle reviewed; and (3) even if the facts set out in the Background section are hearsay, Native American has not shown that this section is unreliable or that its admission would unfairly prejudice Native American.

Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703.

Although Boyle did not personally observe the facts or data in the Vertex Report, as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) ("Experts may rely on hearsay evidence in forming their opinions."). The Background section sets out the assumptions and facts on which Boyle based his opinions, and explains that he used the Vertex Report as a source. The first sentence of the Background section states: "According to information retrieved from the VERTEX Report . . ." (Docket Entry No. 53). Another section of Boyle's report, titled "Documents Relied Upon," explains that he "reviewed documents provided to [him] in this case. These materials include the Report of Jeffrey A. Compton, the VERTEX Report dated 1-17-18 and the Deposition

of Rick Luna." (*Id.*).

The motion to exclude the Background section of Boyle's report, (Docket Entry No. 62), is denied.

## III.    ENGlobal's Motion to Designate a Responsible Third Party

ENGlobal moved to designate Hurst Boilers as a responsible third party under Section 33.004(a) of the Texas Civil Practice and Remedies Code. (Docket Entry No. 60). ENGlobal asked Native American to help it select vendors for the project. Native American told ENGlobal that Hurst Boilers was one of its "preferred" equipment vendors, and ENGlobal contracted with Hurst Boilers to provide combustible boilers for the project. ENGlobal alleges that Hurst Boilers "was unable to provide emissions data necessary to meet air quality requirements"; "was unable to provide a completed process flow diagram"; and, "when ENGlobal checked the energy balance related to Hurst's combustion boiler, it was discovered that the mass and energy balance was incorrect." (*Id.*). According to ENGlobal, Hurst Boilers's actions "caused or contributed to the issues alleged" in Native American's counterclaims.

Chapter 33 of the Texas Civil Practice and Remedies Code addresses proportionate responsibility and applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought" and claims under the Texas Deceptive Trade Practices Act. TEX. CIV. PRAC. & REM. CODE § 33.002. Section 33.004 sets out detailed procedures for designating responsible third parties and limiting the legal effect of those designations. "If an objection to the motion for leave is timely filed, the court shall grant leave to designate the person as a responsible third party unless the objecting party establishes: (1) the defendant did not plead sufficient facts concerning the alleged

22

responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure; and (2) after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure." *Id.* § 33.004(g). Because § 33.004 "applies exclusively to actions based in tort or brought under the DTPA, . . . a defendant cannot designate a responsible third party with respect to a *contract* claim against him." *Nels Cary v. Day*, 2008 WL 631242, at *2 (N.D. Tex. Feb. 29, 2008) (citing *In re Kyocera Wireless Corp.*, 162 S.W.3d 758, 769 (Tex. App.—El Paso 2005, orig. proceeding) ("Because [the plaintiff] asserts only a contract claim against [the defendant], the proportionate responsibility scheme found in [chapter 33] is inapplicable.")).

Native American correctly argues that § 33.004 does not apply because its claims are not "based on tort." (Docket Entry No. 70). The claims here are for breach of contract and money had and received. Section 33.005 does not apply. *Nels Cary*, 2008 WL 6312424, at *2. Although Native American's claims for fraudulent inducement and negligent misrepresentation are tort claims, ENGlobal has not alleged any facts connecting Hurst Boilers to any alleged representations by ENGlobal. Hurst Boilers is neither a party to, nor is alleged to have made any representations about, the contract. ENGlobal's motion states that Hurst Boilers failed to cooperate *after* ENGlobal began the contract work. Native American's counterclaims for negligent misrepresentation and fraudulent inducement relate to ENGlobal's conduct *before* it entered into the contract. ENGlobal has not plausibly pleaded facts connecting Hurst Boilers to the tort counterclaims against ENGlobal.


ENGlobal's motion to designate Hurst Boilers as a responsible third party, (Docket Entry No. 60), is denied.

## IV.	Conclusion

ENGlobal's second motion for summary judgment, (Docket Entry No. 56), ENGlobal's motion to exclude Native American's expert testimony, (Docket Entry No. 58), ENGlobal's motion to designate a responsible third party, (Docket Entry No. 60), Native American's motions to exclude the testimony of ENGlobal's damages and technical experts, (Docket Entries No. 62, 65), and Native American's motion for partial summary judgment, (Docket Entry No. 64), are denied.

SIGNED on April 19, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge